# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SONNIEL R. GIDARISINGH,

        Plaintiff,

v.

NURSE PAMELA J. DOBBINS,

        Defendant.

Case No. 22-CV-468-JPS

**ORDER**

      Plaintiff Sonniel R. Gidarisingh, ("Plaintiff") an inmate confined at Waupun Correctional Institution ("WCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant Pamela Dobbins ("Defendant") violated his Eighth Amendment and state-law rights. ECF No. 1. This case proceeds on the following three claims against Defendant: (1) Eighth Amendment deliberate indifference to a serious medical need; (2) state-law claim for the intentional infliction of emotional distress; and (3) state-law negligence. ECF No. 11 at 2. On July 22, 2024, the Court issued an order that, among other things, denied Defendant's motion for summary judgment without prejudice and allowed the parties to refile summary judgment motions. ECF No. 80. On February 7, 2025, the Court denied Plaintiff's motion for reconsideration. ECF No. 110.

      Now pending before the Court is Defendant's renewed motion for summary judgment, ECF No. 88, Plaintiff's motion to stay the deadline to filed renewed motions, ECF No. 87, Plaintiff's motion to strike Defendant's summary judgment materials, ECF No. 105, and Plaintiff's motion for an order granting reimbursement of litigation expenses, ECF No. 107. The

motions are now fully briefed and ready for disposition. In light of the Court denying Plaintiff's motion for reconsideration and the motions being fully briefed, the Court will deny Plaintiff's motion to stay the deadline to file summary judgment as moot. As described in detail below, the Court finds that factual issues preclude summary judgment and this case will proceed to trial.

1. **LEGAL STANDARD – SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

2. **FACTUAL BACKGROUND**

   2.1 **Factual Submissions and Motion to Strike**

Prior to delving into the factual specifics of the case, the Court will briefly address the parties' factual submissions and Plaintiff's motion to strike Defendant's various summary judgment filings, ECF No. 105. To begin, the parties were largely unable to comply with the Court's summary

judgment procedures to submit joint undisputed facts. The parties' undisputed bare-boned facts are contained in a single paragraph and tell very little about what actually happened in the matter at hand. *See* ECF No. 93. This should have been a sign to the parties that disputed facts would likely preclude summary judgment. Instead, the parties attempt to fill in the details with their own proposed findings of facts; unsurprisingly, the parties tell two significantly different versions of the same story in their factual submissions. *Compare* ECF No. 90 *with* ECF No. 97.[1] As such, the facts below for the most part tell Plaintiff's version of events, as the Court is obliged to take all facts and reasonable inferences in the light most favorable to the non-moving party.

The Court does not note every disputed fact below; indeed, there are too many to mention. The Court does, however, wish to highlight Defendant's misunderstanding of disputed facts at the summary judgment stage. Defendant argues at various points that Plaintiff has no "credible" evidence to counter her written "contemporaneous" medical note. *See e.g.*, ECF No. 103 at 5. Essentially, Defendant suggests that Plaintiff's sworn statement is not credible simply because it contradicts Defendant's contemporaneous written statement. Defendant is mistaken. Defendant's written evidence is no more credible than Plaintiff's declaration at this stage in the proceedings. If Defendant's position were accurate, all a prison

---

[1]The parties could not even agree to what shift Defendant worked on the day in question. *See* ECF No. 103 ¶ 77. Plaintiff proposed that Defendant worked the 1:00 p.m. to 9:30 p.m. shift, but Defendant disputes this fact and offers no alternative fact other than stating Plaintiff lacks foundation and personal knowledge as to this fact. *Id.* Although this fact is not material to the issue at hand, this dispute highlights the parties' inability to work together to present undisputed facts to the Court.

official would need to do is lie on a medical chart in order to cover up their bad act and an incarcerated prisoner would have no ability to challenge such a writing. To be sure, a contemporaneous written note may have more credibility with a jury; however, the Court does not weigh competing evidence at the summary judgment stage.

Finally, the Court will deny Plaintiff's motion to strike Defendant's various summary judgment filings. Plaintiff argues that Defendant ignored the Court's prior order to prevent new legal arguments in any renewed summary judgment motions. The Court's order, however, did not prohibit new facts; it prohibited new legal arguments. *See* ECF No. 80 at 5. The Court does not find that Defendant's submissions are contrary to the Court's prior order. In any event, Plaintiff's argument is largely a moot point since the Court finds that disputed facts preclude summary judgment. As such, the Court turns to the relevant facts in the light most favorable to Plaintiff as the non-moving party.

### 2.2 Relevant Facts

Plaintiff is an incarcerated prisoner at WCI. In September 2021, Plaintiff underwent successful laparoscopic surgery to repair a recurrent right inguinal hernia at the UW Health Hospital in Madison. The evening before the surgery, on September 22, 2021, at approximately 7:30 p.m., Defendant was delivering medications to inmates in the south cell hall at WCI. Defendant stopped at Plaintiff's cell and gave Plaintiff a medication list. While Defendant was at his cell, Plaintiff observed that Defendant had a bag strapped to her arm that had "MEDICATION" written on the side of the bag.

The following day, on September 23, 2021, Plaintiff awoke from the hernia surgery in excruciating pain in his belly and right groin area as a result of the surgery. While still at the hospital, Dr. Zimmerman prescribed Percocet for Plaintiff to take while he was at the hospital for pain from the surgery. Plaintiff received a dose of Percocet at 11:18 a.m. Plaintiff received another dose of Percocet from RN Carly E. Hood at 1:36 p.m. Before Plaintiff was discharged at around 1:40 p.m., Plaintiff requested that RN Carly Hood contact the prison to request that Plaintiff would receive his medication at this cell. It is unclear from the record if this call was ever made.

Plaintiff could not walk properly after the surgery. The two escorting officers assisted Plaintiff with getting dressed and pushed him in a wheelchair to the transport van. The drive back to WCI from the hospital took approximately one hour and twenty minutes. The travel on the highway exacerbated the excruciating pain in Plaintiff's incisions because of the constant jolting of the heavy prison transport van.

WCI physician Dr. Jeanpierre prescribed Plaintiff a narcotic pain medication, on September 10, 2021, to be provided upon Plaintiff's return to WCI. Dr. Jeanpierre gave Defendant instructions that Plaintiff should be assigned a lower bunk in a lower tier to accommodate any difficulties he might have in climbing housing unit stairs to an upper tier and because he would be closer to the location where his medications were dispensed. There is no written evidence in the record that Dr. Jeanpierre instructed Defendant to contact security and have Plaintiff assigned to a lower bunk in a lower tier. Defendant maintains she spoke with Dr. Jeanpierre and Plaintiff presents no evidence to the contrary.

Once back at WCI, at around 3:10 p.m., Defendant came to assess Plaintiff at the prison "overpass." Plaintiff told Defendant that he was in

excruciating pain from the surgery and that he had difficulties walking. Defendant asked Plaintiff what his pain level was, and Plaintiff responded that his pain was ten out of ten. Plaintiff was sweating profusely at the time. Plaintiff then requested his post-surgery pain medication from Defendant; Defendant did not respond to Plaintiff's request even though Plaintiff believes she could clearly hear him because she was less than twelve inches away from Plaintiff. Plaintiff then requested that Defendant have Plaintiff's pain medication taken to his cell due to Plaintiff's walking difficulties. Defendant immediately became argumentative and very angry. Defendant told Plaintiff that security would not take any pain medication to Plaintiff at his cell and that Plaintiff would have to walk to receive medication. Plaintiff told Defendant he did not want to be removed from his single cell to a double cell. Defendant then pulled out a refusal of health care form and demanded that Plaintiff sign it for refusing medical treatment. Plaintiff disputes that he refused medical treatment.

From at least Plaintiff's perspective, WCI did not enforce or practice a policy of requiring inmates with prescribed medications to be housed in lower tiers. Plaintiff had three surgeries in 2021 in which he was prescribed narcotics while housed in his single cell. When physically assessing Plaintiff, Defendant did not even lift Plaintiff's shirt to check any of Plaintiff's incisions even though Plaintiff was complaining of excruciating pain and difficulty walking. As a result of Defendant not lifting up his shirt, Plaintiff believes Defendant lied on the assessment form when she wrote that "Plaintiff's surgical dressing was clean, dry, and intact, and that the incisions site free of redness/swelling/drainage."

From her perspective, Defendant understood that it was the policy of WCI that narcotics medication be prepared at the medication room in the

Page 6 of 18
Case 2:22-cv-00468-JPS    Filed 05/15/25    Page 6 of 18    Document 111

Health Services Unit and transported to the locked narcotics box in the sergeant's station in the housing unit for administration to the inmates by prison officials. Defendant does not point to any such policy in the record. Defendant maintains she was not responsible for preparing, transporting, or distributing Plaintiff's pain medication on the day in question.[2] Plaintiff disputes this fact because no policy supports Defendant's position.

Plaintiff believes that Defendant was responsible for administering Plaintiff's pain medication prior to him going back to his assigned cell; Defendant maintains she was not responsible for administering the medication. Defendant angrily left Plaintiff at the overpass without ordering a wheelchair for Plaintiff; Plaintiff was forced to walk back to his cell with the help of another inmate. Inmate Mark Evans assisted Plaintiff to his cell at approximately 3:30 p.m. Upon Plaintiff's arrival at his cell, Plaintiff was in excruciating pain and he requested his pain medication from Sgt. Perry. Sgt. Perry told Plaintiff that his medication was not in the box for narcotics. Plaintiff requested that Sgt. Perry bring his medication and also to allow him to stay in single cell and to not be moved. Sgt. Perry granted Plaintiff's request not to be moved to another cell.

Sgt. Perry called HSU staff to request Plaintiff's pain medication. Plaintiff believes Defendant received the call. It is unclear from the record how Plaintiff knows this fact; however, it is undisputed that Sgt. Perry contacted Defendant at least once to inform her that Plaintiff's medication was not at the sergeant's station in Plaintiff's housing unit. Defendant provides that she went to the HSU and noted neither Plaintiff's medication

---

[2] Defendant does not indicate who, if not her, was responsible for these duties.

nor his medication chart was in the locked storage; Defendant believed this meant Plaintiff's medications had already been taken to the sergeant's station. Defendant provides that she searched for Plaintiff's medication, as other duties allowed, throughout the remainder of her shift until she left at between approximately 9:00 p.m. and 9:30 p.m. Plaintiff believes Defendant is lying and knew where the medication was located.

Plaintiff's pain from the surgery got worse and he was in excruciating pain while waiting for his medication.[3] At approximately 4:00 p.m., Plaintiff saw Sgt. Kootz giving medications out to inmates. Plaintiff asked Sgt. Kootz if a nurse had brought Plaintiff's medication yet and Kootz replied they had not. At 6:00 p.m., Plaintiff saw C.O. Reynolds and again asked if a nurse had brought Plaintiff's medication. Reynolds responded that no one had brought the medication. Plaintiff asked Reynolds to call the nurse to bring Plaintiff's prescribed pain medication because Plaintiff had excruciating pain. Reynolds assured Plaintiff that he would relay Plaintiff's message to Sgt. Perry. Plaintiff believes that Defendant received this phone call at 6:00 p.m.; the record is unclear if he heard Defendant on the phone or not. Plaintiff believes that Defendant intentionally withheld his pain medication to spite Plaintiff for wanting to receive the medication at his single cell and for not wanting to move.

At 6:30 p.m., Plaintiff's pain got worse, and he requested that inmate Kristopher Rosche, the inmate "tier tender," ask Sgt. Perry about the

---

[3]Plaintiff includes many facts about the flashbacks he experienced as a result of the pain he experienced at this time. The Court does not include these facts because the extent of Plaintiff's damages is immaterial at the summary judgment stage. Defendant does not argue that Plaintiff did not have a serious medical condition, and it is undisputed that Plaintiff was in serious pain after the surgery.

medication. Rosche returned and told Plaintiff that Sgt. Perry was going to call the nurse again to get the pain medication. Defendant brought Plaintiff's medication to Sgt. Perry at approximately the time her shift was about to end.[4] Sgt. Perry provided Plaintiff's prescribed pain medication at 8:51 p.m. in his cell. Plaintiff had received his last pain pill at 1:36 p.m. at the hospital. Plaintiff's hospital prescription was for medication once every four hours as needed, and Plaintiff's prison pain medication was set to start at 4:30 p.m.[5]

On October 6, 2021, Plaintiff told his psychologist that a nurse had intentionally delayed Plaintiff's pain medications and caused Plaintiff excruciating pain. Although Plaintiff's medical record indicates that Plaintiff had blamed a guard for the delayed medication, Plaintiff believes the medical notes are mistaken.

## 3. ANALYSIS – SUMMARY JUDGMENT

Defendant brought a motion for summary judgment seeking dismissal of the Eighth Amendment claim for deliberate inference to a

---

[4]Defendant's response to Plaintiff's proposed finding of fact does not address whether Defendant herself delivered the mediation to Sgt. Perry. *See* ECF No. 103 ("**Undisputed** that Sgt. Perry administered Mr. Gidarisingh's Norco at Mr. Gidarisingh's cell at 8:51 pm. **Undisputed** that this is around the time that Ms. Dobbins shift is "about to end."). This version of events directly contradicts Defendant's declaration which that provides that Nurse Annie found the medication in an "unmarked non-descript cardboard box in the medication room." ECF No. 92. at 5. In any event, the Court takes this fact in the light most favorable to Plaintiff at the summary judgment stage and does not weigh competing evidence.

[5]It is unclear whether Plaintiff would have received the medication at 4:30 p.m. or instead waited until 5:30 p.m. after four hours had passed since his last pain medication. This fact is, however, immaterial for the purposes of summary judgment.

serious medical need and dismissal of the state law intentional infliction of emotional distress claim.[6] ECF No. 89. Defendant argues that the undisputed facts show that Defendant was not deliberately indifferent to Plaintiff's medical need for pain medication. *Id.* 4-9. Defendant further argues that the undisputed facts show she did not intend to cause emotional distress to Plaintiff. *Id.* at 9. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will deny Defendant's motion for summary judgment in full and this case will proceed to trial.

### 3.1 Eighth Amendment Deliberate Indifference

To prove that Defendant violated his rights under the Eighth Amendment, Plaintiff must present evidence establishing that he suffered from "'an objectively serious medical condition'" and that Defendant was "'deliberately, that is subjectively, indifferent'" to that condition. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when he or she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"'A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620

---

[6]Defendant did not seek summary judgment on the state law negligence claim. ECF No. 89 at 1 n.1. Thus, this claim will proceed to trial.

(7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "'that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

Under the Eighth Amendment, an incarcerated person does not have the right to direct his own course of treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Likewise, an incarcerated person's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[ ] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). To defeat Defendant's motion for summary judgment, Plaintiff must present evidence showing the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Id.* at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Finally, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*,

Page 11 of 18
Case 2:22-cv-00468-JPS    Filed 05/15/25    Page 11 of 18    Document 111

658 F.3d 742, 753 (7th Cir. 2011) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). To prevail on an Eighth Amendment claim alleging a delay in providing treatment, the plaintiff "must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties*, 836 F.3d at 730–31. Such evidence may include a showing in the plaintiff's medical records that "the patient repeatedly complained of enduring pain with no modifications in care." *Id.* at 731; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

Here, and as to the first prong, Plaintiff alleges suffering excruciating pain for multiple hours due to not receiving his prescribed pain medication following surgery. Defendant does not dispute that Plaintiff's post-surgery pain was objectively serious. ECF No. 89 at 4. As such, the Court is satisfied that Plaintiff's need for pain medication following surgery constituted an objectively serious medical need.

Second, the Court finds that a reasonable juror could find that Defendant was deliberately indifferent to Plaintiff's need for pain medication. The Seventh Circuit has commented that direct evidence is "rarely forthcoming" in a deliberate indifference case because "[p]rison officials do not typically proclaim that they violated the Constitution by ignoring a known risk." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022). Instead, most deliberate indifference cases turn on circumstantial evidence. *Id.* A jury can reasonably infer deliberate indifference in a number of different ways, including but not limited to the denial of medical treatment all together and the delay of medical care. *See id.*

The Court likens this case to *Machicote v. Roethlisberger*, 969 F.3d 822 (7th Cir. 2020), where the Seventh Circuit Court reversed the district court's summary judgment finding for a nurse as to an Eighth Amendment deliberate indifference claim. There, the prisoner plaintiff had surgery that left him in extreme pain and necessitated strong pain medication at regular intervals. *Id.* at 824. The plaintiff faced delays and interruptions in receiving the medication and experienced significant pain as a result. *Id.* The district court granted summary judgment as to all defendants and concluded that the plaintiff had not shown any defendants were deliberately indifferent to his suffering. *Id.* The Seventh Circuit disagreed with that conclusion and found that a combination of events could convince a jury that the nurse was deliberately indifferent. *Id.* at 827. The court reasoned, in part, that a jury could reasonably conclude that the nurse had the plaintiff's dosage scheduled changed simply because the nurse did not want to administer the medication every six hours. *Id.*

Although there was no direct evidence for this fact, the Seventh Circuit found that the "inference comes from the heated exchange" the plaintiff had observed the nurse have after he had requested his pills outside the prison's normal distribution time and the subsequent change to his medication order. *See id.* Viewed in the light most favorable to the plaintiff, the court found that this incident could be seen as prolonging the plaintiff's pain with no medical justification. *Id.* The court also relied on the fact that the nurse did not contact a doctor after the plaintiff's medication ran out and he was still reporting extreme pain. *Id.* at 828. In assessing the events, the court noted that any one incident on its own may or may not have been enough to avoid summary judgment, but definitively found that

together they could support a finding that the nurse deliberately and recklessly ignored the plaintiff's pain. *Id.*

Here, the Court finds that the facts and their reasonable inferences, when taken as a whole and in the light most favorable to Plaintiff, could allow a reasonable juror to find that Defendant deliberately prolonged Plaintiff's pain for hours. As is typical in these cases, there is no direct evidence that Defendant knowingly withheld Plaintiff's pain medication. However, the Court finds that various pieces of circumstantial evidence taken together could allow a jury to find that Defendant was deliberately indifferent to Plaintiff's pain. It is Defendant's burden to show she is entitled to summary judgment, and she has failed to meet that burden. The record in this case is far from complete and Defendant has produced scant evidence aside from her own declaration. This is a classic he said, she said story.

Plaintiff's version of the facts shows that Defendant was angry at Plaintiff during his post-surgical assessment for requesting to remain in his single cell and requesting to have his pain medication delivered directly. Plaintiff's version also shows that Defendant blatantly lied in her written assessment of his wounds because she never even lifted Plaintiff's shirt up to observe his body. It is undisputed that Plaintiff's pain medication could not be located for several hours.

It is further undisputed that Defendant was told at some point that Plaintiff did not have his medication. A reasonable inference from this fact is that Defendant was aware Plaintiff continued to be in serious pain. The record is unclear on exactly who was supposed to deliver Plaintiff's pain medication that day. However, Plaintiff presents evidence that Defendant was delivering medication to inmates the evening prior to his surgery and

maintains that Defendant was responsible for the medication. As such, a juror could reasonably conclude that Defendant was responsible for Plaintiff's medication on the day in question as well. Further, while Plaintiff cannot, of course, definitively dispute what Defendant did or did not know, circumstantial evidence at least suggests she may have known where the medication was located. According to Plaintiff, Defendant delivered the medication to Sgt. Perry to administer to Plaintiff near the end of her shift. A reasonable inference from this fact, combined with Defendant's anger, could be that Defendant knew where the pain medicine was and intentionally withheld it to punish Plaintiff.

Finally, the Court pauses momentarily to consider the length of time Plaintiff's medication was delayed. Depending on how the evidence is viewed, Plaintiff's medication was delayed for either approximately three hours and twenty minutes or four hours and twenty minutes. The Court recognizes that for medical treatment, and especially in the prison setting, this delay is a relatively short period of time. However, the length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Arnett*, 658 F.3d at 753 (quoting *McGowan*, 612 F.3d at 640. Here, Plaintiff alleges excruciating pain that at one point was a ten out of ten pain. And, if Plaintiff's version of events is believed, the ease of providing the pain medication was incredibly simple because Plaintiff alleges Defendant knew where the medication was the entire time. As such, the Court finds that the relatively short delay in pain medication does not necessitate summary judgment for Defendant.

Based on the record before it, the Court finds that factual disputes preclude summary judgment. *See Machicote*, 969 F.3d at 827; *Rivera v. Gupta*, 836 F.3d 839, 842 (7th Cir. 2016) (reversing summary judgment for prison

doctor because "[a] reasonable jury might well infer that personal hostility, divorced from medical judgment, had motivated [the doctor's] refusal to provide [the prisoner] with any further treatment"). The Court notes, however, that this case presents a close call of where to draw the line on what is and is not a reasonable inference. The Court's conclusion is fact intensive and a different outcome could result in a similar case with slightly different facts. Based on the record here, however, the Court finds that a reasonable juror could find in Plaintiff's favor on the deliberate indifference claim. As in *Machicote,* the Court notes this is "not to say a jury could not come to the opposite conclusion or credit [Defendant's] side of the story." 969 F.3d at 828. The Court only finds that Plaintiff is "entitled to the opportunity to make his case at a trial." *Id.* As such, the Court will accordingly deny Defendant's motion for summary judgment on the Eighth Amendment claim of deliberate indifference to Plaintiff's serious medical need.[7]

### 3.2 Intentional Infliction of Emotional Distress

For largely the same reasons as identified above, the Court will deny Defendant's motion for summary judgment as to the state law claim for intentional infliction of emotional distress. For intentional infliction of emotional distress, a plaintiff must plead that the "defendant's conduct was

---

[7]Defendant did not argue that she was entitled to qualified immunity for this claim. *See* ECF No. 89. As such, the Court does not address the issue of qualified immunity. Even if she had, "[t]he general standard for liability under the Eighth Amendment for refusal to treat a serious medical condition was well-established at the time of these events." *Walker v. Benjamin,* 293 F.3d 1030, 1040 (7th Cir. 2002). As in many cases brought under the Eighth Amendment, "[t]he uncertainty in this case is factual," not legal. *See Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018).

so egregious that the average member of the community would regard the acts forming the basis for the claim as being a complete denial of the plaintiff's dignity as a person." *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991). As discussed above, numerous factual disputes exist in this case. Taking the facts in the light most favorable to Plaintiff, however, a reasonable juror could find that Defendant intentionally withheld Plaintiff's medication to punish him for seeking to remain in his cell. And that, if true, could form the basis as a complete denial of Plaintiff's dignity as a person. As such, factual disputes preclude summary judgment and the Court will deny Defendant's motion as to the state law intentional infliction of emotional distress claim.

### 4. REIMBURSEMENT OF LITIGATION EXPENSES

Plaintiff seeks reimbursement for the expenses he incurred as a result of Defendant's renewed motion for summary judgment. ECF No. 107. The Court had previously indicated that, at the *end* of the case, Plaintiff may be entitled to reasonable costs related to any renewed motions for summary judgment in order to avoid prejudice to Plaintiff. ECF No. 80 at 5. The Court reiterates that Plaintiff may be entitled to costs; however, Plaintiff's motion is premature at this juncture in the case and the Court will therefore deny it as premature. The Court notes, however, without making any final determination, that Plaintiff's request for $17,129.00 does not appear to be a reasonable request. Costs typically do not include attorney's fees. *See* Fed. R. Civ. P. 54(d). Moreover, Plaintiff is proceeding pro se and has provided no factual basis for the $150.00 per hour he claims for work performed. *See* ECF No. 108. If the case does go to trial and either side is ultimately entitled to costs as the prevailing party, the parties should first work together in an attempt to reach a resolution regarding costs.

### 5. CONCLUSION

For the reasons explained above, the Court denies as moot Plaintiff's motion to stay the summary judgment deadline, denies Plaintiff's motion to strike summary judgment filings, and denies as premature Plaintiff's motion to reimburse litigation expenses. The Court additionally denies Defendant's renewed motion for summary judgment in full and this matter will proceed to trial on all three claims. The Court will enter a trial scheduling order in due course. Should the parties seek to continue settlement discussions with the help of a magistrate judge, they must jointly make any such request in a timely fashion.

Accordingly,

**IT IS ORDERED** that Defendant's renewed motion for summary judgment, ECF No. 88, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to stay the deadline, ECF No. 87, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike Defendant's summary judgment materials, ECF No. 105, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion for an order granting reimbursement of litigation expenses, ECF No. 107, be and the same is hereby **DENIED as premature**.

Dated at Milwaukee, Wisconsin, this 15th day of May, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge